GARY M. RESTAINO
United States Attorney
District of Arizona

RAYMOND K. WOO
Arizona State Bar No. 023050
SETH T. GOERTZ
Arizona State Bar No. 031645
Assistant U.S. Attorneys
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
Telephone: 602-514-7500
Email: raymond.woo@usdoj.gov
seth.goertz@usdoj.gov
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br>Plaintiff,<br>vs.<br>Jose Teran,<br>Defendant. | No. CR-21-00955-PHX-DLR<br>**GOVERNMENT'S SENTENCING MEMORANDUM** |

The government recommends a sentence of 70 months. Defendant, Jose Teran, engaged in a concerted effort—over nearly five years—to steal royalty proceeds from approximately 50,000 song titles, causing a loss of more than $23,000,000.00. Teran personally obtained more than $6 million in personal profit, which he used to sustain a lavish lifestyle. In addition to the harm Mr. Teran caused and the exorbitant profits that he reaped; a significant sentence is warranted to deter future conduct. Even after his indictment, Mr. Teran fraudulently obtained an additional $190,000 in royalty proceeds to which he was not entitled. The government is also troubled by Mr. Teran's plans to remain in the music business, where he will again have access and connections to the same mechanisms that allowed him to perpetrate this fraud. A 70-month sentence is undoubtably

substantial but given Mr. Teran's conduct and the need to deter future fraud, it is entirely warranted.

## I. Factual Background

On January 17, 2023, Teran pleaded guilty to conspiracy (18 U.S.C. § 371), wire fraud (18 U.S.C. § 1343), and transactional money laundering (18 U.S.C. § 1957). (Doc. 65.) In particular, Teran admitted to conspiring with co-defendant, Webster Batista Fernandez ("Batista"), to steal royalty payments for approximately 50,000 song titles. (Doc. 65 at 10.) Teran and Batista did so by searching the online music platform, Y.T., for recorded songs that were not actively monetized. Despite having no ownership rights to these songs—because the rights lawfully belonged to other individuals—Batista and Teran claimed ownership over those songs through an entity called "MediaMuv." (Doc. 65 at 10.)

In order to amass a catalog of approximately 50,000 songs that they purported to own, Batista and Teran hired several "employees" to search for non-monetized songs on the Y.T. platform. (Doc. 65 at 10.) At one point, Batista and Teran had 5-8 individuals working for them. These individuals used a specific browser application to identify non-monetized songs, which they would then falsely claim to own under the MediaMuv entity. (Doc. 65 at 10.) Batista and Teran also hired a third party, A.R., to help police and monetize their song library on Y.T. To do so, Batista and Teran represented that, through MediaMuv, they had the lawful rights to a 50,000-song library. (Doc. 65 at 10.)

When disputes would arise, Teran refused to back down or acknowledge that MediaMuv wasn't the rightful owner. In response to a claim that he was stealing royalties that weren't his—exactly what he and Batista *were* doing—Teran aggressively defended MediaMuv's fraudulent library: "Any issue that D.H. has with our content, he can email me directly, we will not issue any revenue share to him or anyone just because he says he has the right to, we have contracts, and if he has doubts, we can keep discussing this in front of a federal judge, thanks."[1] (PSR at ¶ 15.)

[1] In an October 31, 2019, interview with law enforcement, Teran admitted to using

Overall, Teran and Batista stole more than $23,000,000.00 in royalties to which they were not entitled. The scope of their fraud was so large that the music publication Billboard described it as "one of the largest – if not the largest – known YouTube music royalty scams in history." Kristin Robinson, *How Did Two Unknown Latin Music Operators Make $23 Million From YouTube? The IRS Says They Stole It*, BILLBOARD, (last accessed June 16, 2023) https://www.billboard.com/pro/youtube-fraud-royalties-scam-irs-latin-chenel-yenddi-mediamuv-adrev/. For his part, Teran received $6,273,772.33 in proceeds over the course of the scheme, which he used to promote a lavish lifestyle, including luxury vehicles, jewelry, and real estate (including a 6,000 square foot estate in the Troon development of North Scottsdale, which he paid $11,000 per month to rent).

Even after Teran was indicted, he continued to claim stolen royalty payments, and he did so by attempting to hide that conduct from the government. For a short time after his indictment (November 16, 2021), Y.T. was still paying royalty fees to MediaMuv. Before Y.T. was able to stop further payments, Teran created a new bank account with National Bank of Arizona, which he used to transfer royalty payments to himself.

Indeed, on November 30, 2021, twelve days after receiving a summons regarding this indictment, $285,344.43 in Y.T. royalty proceeds were deposited into a Chase Bank account in the name of MuveMusic, LLC, which was in Teran's sole control. *See* Govt. Discovery BATISTA_037654; 037616. These proceeds were solely derived from Batista and Teran's fraud. On the same day, Teran opened a bank account at National Bank of Arizona in the name of MuveMusic, LLC. Teran then transferred $191,449.63 to his newly created bank account. *See* Govt. Discovery BATISTA_037764–69. After doing so, Teran moved the funds out of the government's reach, further reaping the benefits of his fraudulent enterprise.[2]

---

the jmedina@mediamuv.com email. Govt. Discovery BATISTA_00043-44.

[2] Teran was arraigned the following day, and Y.T. subsequently withheld any further royalty payments.

## II. The PSR's Sentencing Calculation.

The PSR calculated Teran's total offense level at 30, which combined with a criminal history category of I, provides for a guidelines range of 97 to 121 months. (PSR at 22.) To arrive at this number, U.S.S.G. § 2B1.1(b)(1)(K) provided a base offense level of 27, due to an actual loss amount of approximately $23,000,000.00. (PSR at ¶ 39.) The PSR then added two levels because the offense involved ten or more victims (U.S.S.G. §2B1.1(b)(2)(A)(i)), as well as a four-level upward adjustment because Teran was the leader of an organization with five or more participants (U.S.S.G. §3B1.1(b)). (PSR at ¶¶ 40, 42.) Finally, Teran received a three-level downward adjustment for acceptance of responsibility, resulting in a total offense level of 30. (PSR at ¶ 48.) The government agrees with nearly all of the PSR's calculations, except that the applicable loss should be Teran's gain ($6,300,000), as stipulated to by the parties, and that a three-level upward adjustment under U.S.S.G. §3B1.1(b) more appropriately captures Teran's role as a manager and supervisor of the organization. (Doc. 87.) Accordingly, the government's recommended offense level is a 27, which paired with criminal history category I, results in a guideline range of 70-87 months imprisonment.

## III. Sentencing Recommendation

The United States recommends a 70-month sentence, which is at the low end of Teran's recommended guidelines range. A 70-month sentence is measured and appropriately achieves the sentencing goals set forth in 18 U.S.C. § 3553(a). In this case, the government is most concerned with fashioning a sentence that reflects the seriousness of the offense and deters future conduct (both of Mr. Teran and the general public).[3] As

[3] The government requests that the Court set a restitution hearing to determine an appropriate restitution amount. The PSR set restitution in the amount of $1,464,717.90. (PSR at 24–25). The government is actively working to obtain information from other victims, which is a substantial undertaking because the majority of victims reside outside of the United States. The government has recently expanded its notification efforts to include Spanish-language notifications and is further widening its public outreach. A future restitution hearing would afford sufficient time for additional victims involved in this case to come forward.

noted above, Teran perpetrated a multi-year fraud scheme that existed solely for the purpose of stealing royalty payments from artists and representatives who were legally entitled to receive the payments. Moreover, Teran did so through a concerted effort that spanned several years and required 5-8 employees working long hours to amass a "library" of 50,000 songs. Beyond the energy needed to create and sustain the fraud, Teran and Batista cultivated a layered façade by creating a record label (MediaMuv), contracting with a third-party administrator to manage the 50,000-plus song library on Y.T., and even used fake names and stolen identities to give their entity a greater veneer of credibility. (PSR at ¶¶ 7, 9–12, 14, 19, 24.)

Teran is also a high-risk to reoffend, both because he plans to remain in the music industry and because the amount of money that he obtained through the scheme. Outside of this scheme, Teran's legitimate work in the music industry yielded only modest gains and the temptation to find similar schemes, with exponentially greater income potential, would appear to be strong. In particular, the government is alarmed that even news of his indictment did not stop Teran from continuing to reap as many stolen royalty proceeds as he could. Teran was so committed to this scheme, that he created a brand new bank account to funnel Y.T. royalties so that he could avoid any efforts to seize or claw back the funds.

Finally, a significant sentence is warranted for purposes of general deterrence. Because of its scope, the significant loss amount, and the extravagance with which Teran and Batista lived off of the stolen proceeds, the music industry has taken a keen interest. In particular, this case received significant attention from the music-related publication, "Billboard." Thus, a substantial sentence is also necessary to deter others from replicating this scheme. Without it, potential fraudsters would be encouraged to attempt similar efforts, believing any potential punishment is worth the payout.

## IV. Conclusion

This case is about greed and the great lengths Batista and Teran went to steal more than $23 million in royalty proceeds. The loss amount is on its own substantial, but Teran's personal benefit—approximately $6 million—was significant. A sentence of 70 months is

appropriate and properly achieves the aims of 18 U.S.C. § 3553(a).

Respectfully submitted this 21st day of June, 2023.

GARY M. RESTAINO
United States Attorney
District of Arizona

*s/ Seth T. Goertz*
RAYMOND K. WOO
SETH T. GOERTZ
Assistant U.S. Attorneys

**CERTIFICATE OF SERVICE**

I hereby certify that on the 21st day of June, 2023, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing a copy to the following CM/ECF registrants:

Jason Silver
Andrew Pacheco
Attorneys for Defendant

*s/ Seth T. Goertz*
U.S. Attorney's Office