**SUZUKI LAW OFFICES, L.L.C.**
Richard J. Suzuki, Esq., No. 021348
2929 East Camelback Road, Suite 224
Phoenix, Arizona 85016
(602) 682-5270
Facsimile: (480) 907-1571
www.suzukilawoffices.com
Attorney for Defendant *Webster Batista Fernandez*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, ) | Case No. **2:21-cr-00955-DLR-1** |
| ) | |
| Plaintiff, ) | **DEFENDANT WEBSTER BATISTA** |
| vs. ) | **FERNANDEZ'S SENTENCING** |
| ) | **MEMORANDUM** |
| **Webster Batista Fernandez** ) | |
| ) | |
| Defendant. ) | |

Comes now, Defendant, Webster Batista Fernandez, by and through undersigned counsel, and hereby submits the following Sentencing Memorandum to this Court prior to his sentencing hearing.  Undersigned counsel has reviewed the Presentence Investigation Report, hereinafter "PSR" with Mr. Batista Fernandez, and Defendant has no substantive objections to the Presentence Investigation Report.

Pursuant to the sentencing factors set forth in 18 U.S.C. §3553(a), Defendant Webster Batista Fernandez requests that this Court accept the plea agreement, grant a variance, and impose a reasonable sentence below the advisory guideline range.  Given Mr. Batista Fernandez's character, family support, strong work ethic, lack of criminal

history, acceptance of responsibility, and efforts towards rehabilitation, a sentence of 48 months' imprisonment, combined with significant restitution, constitutes a reasonable sentence, which will provide sufficient punishment, promote respect for the law, and allow for adequate deterrence.

## I. FACTUAL BACKGROUND

By way of background Webster Batista Fernandez, hereinafter "Mr. Batista Fernandez" is 35 years old and was born in La Vega, Dominican Republic to Jose Batista and Yoselin Fernandez. Webster's father Jose passed away in 2015, and his mother Yoselin resides in the Dominican Republic. Webster is the oldest of five children. Webster has three younger sisters who all reside in the United States: Lorimar (32) lives in Arizona; Issa (30) lives in California; and Amber (28) lives in New York. Webster's brother Jimmy, passed away when he was 17 years old.

As a child, Webster Batista Fernandez was raised primarily by his paternal grandmother, Melva Batista until he was 12 years old. To be sure, Defendant's father was often incarcerated during Webster's youth, and his mother left the home after he was two months old, and then came back into his life when Webster was 12. Webster later immigrated to the United States with his mother and sisters in 2002, when he was 14 years old, due to violence in the Dominican Republic. Mr. Batista Fernandez settled in Phoenix, and then moved to California in 2015. After living in California for two years, Webster moved to Florida in 2017, where he remained until his arrest for the instant action. Webster maintains a close relationship with his mother and siblings.

Webster Batista Fernandez has been in a relationship with his girlfriend Nizza Pena for approximately three years.  Webster and Nina have one child together, Prince Heaven Batista, who is 18 months old.  At the time of his arrest, Webster was living with his girlfriend and son in Sunnyside, Florida. Webster also has two children as a result of a previous relationship: Armani Batista (16) and Melody Batista (12).  Armani and Melody reside with their mother in Arizona.  Webster remains in contact with all of his children.

**Education and Employment History:**

Webster attended Thunderbird High School in Phoenix, Arizona until the eleventh grade.  Mr. Batista Fernandez does not have a high school diploma.

Following high school, Webster Batista Fernandez has been primarily employed in the music industry for the last seven years.  In particular, from 2017 until his arrest for the instant action, Mr. Batista Fernandez was self-employed as a YouTube music influencer, earning approximately $200,000 per month. Prior to this employment, Webster Batista Fernandez was self-employed in the music industry, producing music videos and working for his own company.  Webster also worked for Sony and other big labels producing music videos.  From 2005 until 2007, Webster held a variety of odd jobs, such as working at Goodwill, and for a carwash.

**Efforts Towards Rehabilitation:**

In the instant case, Webster Batista Fernandez has been incarcerated since his arrest in November of 2021.  During his incarceration, Mr. Batista Fernandez decided that he wanted to rehabilitate his life, and participated in Hustle 2.0, which is a self-directed

learning program designed for incarcerated individuals to give them the tools for rehabilitation.  In particular, the program is designed to replace criminality with prosocial thinking and behavior, promote positive relationships and community, develop empathy and emotional awareness, provide effecting coping strategies, build good habits and break bad ones, and prepare incarcerated persons for reentry and post-release employment.

On May 3, 2023, Webster Batista Fernandez received his certificate for completing the Preseason Program.  The Huddle Preseason Program involves completion of a 348-page self-guided crash-course curriculum which includes self-assessments, journal exercises, case studies, testimonials, and success stories. After completing the course, each participant takes a final exam.  As a result of completing the course and passing the final exam, Mr. Batista Fernandez earned his Certificate of Completion. Webster feels that he has benefitted from this self-help program, and plans to continue with the Huddle 2.0 Program during his incarceration. ***(See Hustle 2.0 Preseason Program Certificate & letter, submitted to the Probation Department)***

**Family and Character References:**

In the instant case, Webster Batista Fernandez has received an outpouring of support from family, relatives and friends who will vouch for his integrity, good character, generosity, strong work ethic, compassion for others, and devotion to his family.

Yoselin Fernandez is Webster's mother. Yoselin shares a very close relationship with Webster, who is her first-born child. Yoselin shares that she has several significant

health issues, and when she was sick with COVID, Webster was there to share his support and help her. Moreover, Yoselin's mother died of COVID, and Yoselin appreciates that Webster was there to provide support throughout her grieving process. Yoselin shares her observations of Webster's character:

> "When I was sick with COVID he was so attentive asking if I needed help with anything he was there for me financially and emotionally.  My mom passed away from COVID and at the time he was a huge support for me and I am forever grateful for that.  I am so proud of that the man I raised turned out to be an amazing father, genuine, and loving and I believe he deserves another chance." ***(See character letter from Yoselin Fernandez, submitted to the probation department)***

Lorimar Baez is Webster's sister. Lorimar is married and has four children, including a baby who is six months old. Lorimar describes Webster as one of her best friends, and maintains a close relationship with her older brother. Lorimar shares her observations of Webster's character, which is best exemplified through Webster's commitment to her family. To be sure, according to Lorimar, Webster served as a great role model for her husband on how to be a great father:

> "I believe Webster has always helped me as much as he could.  One thing I am forever grateful is him being a great influence on my now husband. When I met my husband we were just 16 and he didn't have a dad around for most of his life so he saw Webster as a role model.  Webster always had a job and was the best example by always being present and helping with the kids which I believe is a huge reason my husband is such a great dad now." ***(See character letter from Lorimar Baez, submitted to the probation department)***

Ramon Baez is Lorimar's husband and Webster's brother-in-law. Ramon has known Webster for 11 years.  Ramon describes Webster as an honest man and someone who has always been there to help his family. Ramon considers Webster to be a brother to him and shares that Webster has made a positive impact upon his life, helping to mold him into the man he is today:

> "Mr. Batista welcomed me into his family which became mine with open arms and has always been there to offer support ever since.  I consider him a brother and he has done many things to help mold me into who I am today.  He helped me make my first resumes and would offer rides to and from work. I'm now a successful plumber thanks to Webster's continued support and encouragement.  I know if it wasn't for his help I wouldn't have stuck it out in the beginning.  I feel indebted to Webster as now I can provide solely for my family.  He's been an amazing friend and brother to me over the years." ***(See character letter from Ramon Baez, submitted to the probation department)***

Orlando Batista is Webster's uncle. Orlando lives in Florida and shares a close relationship with Webster and his family. Orlando describes Webster as a decent and responsible man who has always been there for his family and grandparents, and also is someone who is willing to extend himself to help those with whom he doesn't share a close family bond:

> "As a close acquaintance, I can testify to his character as a decent man who has lived his life up to the norms of this society.  As a family, he has always been there for me and my parents, but even for the people that he isn't in a close relationship with, Webster has always tried his best to serve humanity…He has grown to be a very decent and responsible man who would be a good contribution to the family and the society in future." ***(See character letter from Orlando Batista, submitted to the probation department)***

Solanyi Batista de Peralta is Webster's cousin. Solanyi has known Webster since his birth, and watched him grow up and become a teenager. Solanyi expresses that Webster was raised as part of an exemplary family, full of love, respect, and responsibility. Solanyi conveys that Webster's paternal grandparents taught him from an early age the value of hard work and responsibility, which has shaped his character today:

> "In the home that Webster Batista grew up in (the home of his paternal grandparents) he learned what work and discipline are and that everything one wants in life is achieved through work, sacrifices and efforts, that is why Webster, from an early age, has known how to work hard to achieve his goals, he was an enterprising boy who made candy to sell to his friends and thus be able to buy what he needed and help his grandparents. He learned to be responsible, supportive, kind and honest." ***(See character letter from Solanyi Batista de Peralta, submitted to the probation department)***

Noel Valentin has been friends with Webster for 12 years. Noel first met Webster 12 years ago in Phoenix before he started his career in music. Noel describes Webster as a great father, son, brother, and friend. Noel also shares her belief that Webster is a man who has always demonstrated an ability to learn from his mistakes:

> "I have always known Webster to be a great father to his kids, a great son to his mother and a great brother to his sisters, he has also been a great friend to me. He has always been a person to follow the rules and have very good standards in his life that's why this comes to such a surprise to me but we all make mistakes and as I know Webster, I know he is aware of his mistakes and is willing to make amends to make his life better he's always been a person to learn from his mistakes and always held his own self accountable to his mistakes." ***(See character letter from Noel Valentin, submitted to the probation department)***

Isidro Rosario has been a close friend to Webster Batista Fernandez and his family for the past 4 years. Isidro describes Webster as a man who is responsible, patient and caring. Isidro shares his reflections of Webster's character:

> "As a close friend to him and his family, I can say for sure to his character as a man who has lived his life up to the laws of this society. As a family member, he has always been there for me, but even for the people that he isn't in a close relationship with, Webster has always tried his best to serve, not only the loved ones, but even others not so close to him. I must confess I am not fully aware for all the proceedings being conducted against him, yet I'm pledging here with my words for his character as a person who cares a lot for his family, especially his grandparents. But one thing I am sure of is that he hasn't been this way all his life. He has grown to be a man responsible, patient and a caring person. Knowing him as I know him, I am sure that this experience serves to him to learn his lesson to be prudent with the decision he must face in the future." ***(See character letter from Isidro Rosario, submitted to the probation department)***

Angels Rates Borras has been friends with Webster for the past two years. Angels met Webster in 2020 when he wrote, directed, and produced a film where he cast Angels as a lead actress. During the time that they worked together, Angels had the opportunity to witness firsthand Webster's character as a hardworking individual who was always professional and exhibited a strong work ethic. Angels also had the opportunity to observe Webster around his children, and found him to be a loving husband and father. Moreover, Angels shares her observations after speaking with Webster, that Webster is remorseful for his conduct and is working towards rehabilitation:

> "Since I met him, he has always been responsible, focused and one of the most hard-working men I have ever known. During the time that Webster and I worked together, there wasn't a single day that Webster wasn't kind to me, or to anyone else around him. I was able to observe him around his children and wife. He has only shown me to be a well-respected

professional and a lovable husband and father…I have also seen Webster in person recently since I have been able to visit him at Central Arizona Florence Correctional Complex, and he conveyed to me about his decisions and the shortfall of judgement and assured me that he wishes to rectify himself.  I believe he will improve from his deeds and has shown to me a keen interest in developing his character and becoming a better human. The counseling that he is receiving will surely guide him in the right path and help him gain his name in the community." *(See character letter from Angels Rates Borras, submitted to the probation department)*

The above references constitute excerpts taken from character letters submitted on behalf of Webster Batista Fernandez. Every letter is written by someone who can attest to the true character of Webster as an individual, son, brother, family member, friend and professional. Every letter describes him as a caring and helpful man and trustworthy individual who continuously demonstrates his desire to help others. These character references all share their support for Webster and they express their belief that Webster is a good and responsible man who has done so much for his family and friends.

Webster feels sincere remorse for his conduct, and the instant offense is not representative of his true character. Fortunately, Webster understands the serious nature of his conduct, is taking responsibility for his actions, and will have the support of his family and friends as he makes positive changes for the future.

**Facts Pertaining to the Instant Offense:**

From 2016 until May 31, 2021, Internal Revenue Service-Criminal Investigation (IRS-CI) agents investigated Webster Batista Fernandez and Jose Medina Teran who

partnered to monetize music from several musical artists they did not have legal authority to monetize or otherwise control.

The investigation revealed the following:  Defendants Webster Batista Fernandez and Jose Teran and other co-conspirators worked together to monetize music on YouTube (Y.T.) which they had no legal authority to monetize.  Defendants searched for songs and uploaded them to Y.T. as mp3 files and falsely claimed ownership over 50,000 songs, thereafter receiving royalty payments for these songs.  Defendants falsely represented to YouTube (Y.T.) and AdRev (A.R.), an intermediary company which administers Y.T. royalty payments and makes disbursements to those who claim to own music assets, that they were entitled to collect any resulting royalty payments.

The investigation further revealed that in 2017, Defendants Webster Batista Fernandez and Jose Teran created an entity called MediaMuv L.L.C. for the purpose of falsely claiming legal rights to music recordings, and entered into a contract with Y.T. to utilize their content management system (CMS). Once defendants gained access to Y.T.'s CMS, they began uploading mp3 files of music they fraudulently claimed to own. Defendants also hired co-conspirators to download mp3 files, which they then uploaded to Y.T. through their CMS access.  Defendants paid the co-conspirators a percentage of the royalties they received for the songs they downloaded.

In July of 2017, Jose Teran and Webster Batista Fernandez fraudulently created contracts with companies which purportedly managed certain artists, and then emailed the contracts to Y.T. and A.R. for the purpose of deceiving Y.T. and A.R., and continuing

their fraudulent operation. Defendants and the co-conspirators created a false legitimacy for MediaMuv by sending interstate emails to A.R. and Y.T. from fictitious employees of MediaMuv, where Defendants did not have authority to use identities of real people in this manner.  Defendants also directed interstate wire transactions of royalty payments into accounts in their name, under their control, which were later used to pay for luxury items and support Defendants' lifestyles. The fraudulent payments were made through interstate wire transactions, sometimes funneled through shell companies, and several of these monetary transactions involved proceeds exceeding $10,000. Throughout the duration of the conspiracy, Defendants fraudulently received royalty payments of more than $20,000,000.

On November 16, 2021, a 30-count Indictment was filed in the U.S. District Court, charging Webster Batista Fernandez and Jose Teran with Counts 1, Conspiracy; Counts 2 through 16, Wire Fraud; Counts 17 through 23, Money Laundering; and Counts 24 through 30, Aggravated Identity Theft.  A forfeiture allegation was also made.

On November 18, 2021, Defendant Webster Batista Fernandez was arrested on the warrant in the Southern District of Florida, Miami where he subsequently appeared before a U.S. Magistrate judge and was ordered detailed. On December 14, 2021, Defendant's case was transferred to the District of Arizona for prosecution of the instant offense.

On April 21, 2022, Defendant Webster Batista Fernandez pled guilty to Counts 1 and 2 of the Indictment, and entered into a written plea agreement. According to the plea

agreement, the parties stipulated that Defendant's sentence shall not exceed the low end of the applicable guideline range. The plea agreement also allows Defendant to argue for a downward departure, variance, or sentence below the cap, and the Court may impose a sentence below the cap. Pursuant to the plea agreement, the sentences for Counts 1 and 2 shall run concurrently, and Defendant has agreed to pay restitution to the victims, in an amount not to exceed $25,000,000.

In the instant case, Defendant Webster Batista Fernandez has no criminal history. Accordingly, Defendant's criminal history points total zero, establishing a Criminal History Category I.  Defendant is facing his first felony conviction.

According to the Presentence Investigation Report, Webster Batista Fernandez's applicable guideline range is 60 months for Count 1, and 97 to 121 months for Count 2, based on a Total Offense Level 30 and Criminal History Category I.  The probation department has recommended a sentence of 60 months for Count 1, and 97 months' imprisonment for Count 2, to run concurrently, representing the low-end of the applicable guideline range.

As acknowledged by the probation department, Mr. Batista Fernandez is sincerely remorseful for his conduct with respect to the instant offense. Defendant regrets his actions, and realizes that he will have to face a significant penalty as a result of his participation in criminal activity, including paying restitution to the victims.  To be sure, Webster Batista Fernandez has demonstrated acceptance of responsibility and admitted to

the factual basis of the plea agreement.  In addition, Defendant feels extreme regret for his actions, and is ashamed for his conduct.

In this case, notwithstanding his conduct in this instance, Mr. Batista Fernandez is a hardworking individual with good character who sincerely regrets his actions.  Mr. Batista Fernandez has learned an important lesson, and realizes that he will have to change his life if he wants to be a part of his children's upbringing in the future.  To this end, Defendant has participated in self-help classes while in custody, and has further agreed to make restitution to the victims in an amount to be determined by this Court.

Considering the mitigating factors in this case, including Defendant's lack of criminal history, good character, acceptance of responsibility, and efforts towards rehabilitation, Defendant requests a variance and sentence of 46 months' imprisonment. Based on the totality of circumstances, a sentence not to exceed 46 months' imprisonment is sufficiently punitive for Defendant's first felony offense, and will provide adequate deterrence from future criminal conduct.

## II.    DISCUSSION

### THE SENTENCING FACTORS SET FORTH IN 18 U.S.C. §3553(a) SUPPORT A VARIANCE AND REASONABLE SENTENCE BELOW THE ADVISORY GUIDELINE RANGE

In *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), the Supreme Court held that the United States Sentencing Guidelines are advisory, not mandatory. In other words, the Guidelines are a required *consideration*, but district courts are permitted to tailor a particular sentence in light of other statutory concerns. *Id*. at 757.

"The district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing." *Id*. at 767.

Ultimately, in arriving at a fair sentence, the Court is *required* to consider certain factors pursuant to 18 U.S.C. §3553(a), including but not limited to: the "nature and circumstances of the offense" *(18 U.S.C. §3553(a)(1))*; "the history and characteristics of the defendant" *(18 U.S.C. §3553(a)(1))*; the kinds of sentences available *(18 U.S.C. §3553(a)(3))*; the need to avoid unwarranted disparities between similarly situated defendants *(18 U.S.C. §3553(a)(6))*; applicable Guideline factors and policy statements *(18 U.S.C. §3553(a)(4) and (5))*; and the need to provide restitution to any of its victims *(18 U.S.C. §3553(a)(7))*.

While the Guidelines were designed to embody the §3553(a) considerations, judges in their discretion may differ on their approach as to how best reconcile "the disparate ends of punishment." *Rita v. United States*, 551 U.S. 338, 127 S.Ct. 2456, 2457-58 (2007).  Thus, the sentencing court is free to disagree with the Sentencing Guidelines, which should not be accorded greater weight than any of the other 18 U.S.C. § 3553(a) considerations.  *United States v. Zavala*, 443 F.3d 1165, 1170-1171 (9th Cir. 2006).  *See also*, *United States v. Plouffe*, 445 F.3d 1126, 1128 (9th Cir. 2006) (a sentence must be reasonable in view of all the factors in Section 3553(a)).

"[T]he appellate court "may consider the extent of the deviation [from the Guidelines], but must give due deference to the district court's decision that the [18 U.S.C.] § 3553(a) factors, on a whole, justify the extent of the variance." *Id.*  A district court's

discretion under the § 3553(a) factors is quite broad." *United States v. Orlando*, 553 F.3d 1235, 1238-39 (9th Cir. 2009).

Pursuant to the sentencing factors set forth in 18 U.S.C. §3553, Defendant Webster Batista Fernandez respectfully requests that this Court accept the plea agreement and render a reasonable sentence below the advisory guideline range.   The history of Mr. Batista Fernandez and circumstances of the case support that a sentence not to exceed 48 months' imprisonment, in conjunction with a sizable restitution order, will provide adequate deterrence, promote respect for the law, and constitutes an adequate disposition to address the seriousness of the offense.

## A.    *Mr. Batista Fernandez's History, Character, and Efforts Towards Rehabilitation*

In the instant case, Webster Batista Fernandez is 35 years old and was born in La Vega, Dominican Republic.  Webster's father passed away in 2015, and his mother Yoselin resides in the Dominican Republic.  Webster was the first born of five children. Unfortunately, Webster's brother Jimmy passed away when he was 17 years old.  Mr. Batista Fernandez has three sisters who all reside in the United States.  Webster maintains a close relationship with his mother, sisters and extended family.

Webster was raised by his paternal grandparents for much of his youth, because his father was often incarcerated and his mother left the home when he was a few months old.  Webster's grandmother Melva Batista was an important influence on his life, and his grandparents taught him the value of hard work, honesty and how to be respectful to others.  When Webster was 12 years old, his mother came back into his life.  Thereafter,

Defendant immigrated to the United States with his mother and siblings when he was 14 years old.  To be sure, Webster and his family witnessed many friends being killed in the Dominican Republic due to violence, and his mother wanted to provide a better life for her family.

Upon immigrating to the United States, Webster and his family settled in Phoenix, where he lived from 2002 until 2015.   While living in Arizona, Defendant attended Thunderbird High School until the eleventh grade.  Webster discontinued his education prior to graduation, and did not obtain his GED.  In 2015, Webster moved to California for a few years, and relocated to Florida.  Webster Batista Fernandez has lived in Florida since 2017.

Webster Batista Fernandez has been in a relationship with his girlfriend Nizza Pena for the last three years.  Webster and Nizza have one child together, Prince Heaven Batista, who is approximately 20 months old.  At the time of his arrest for the instant offense, Webster was living with his girlfriend and son in Sunnyside, Florida.  Webster also has two children, Armani Batista (16) and Melody Batista (12) as a result of his relationship with his wife, Oaeida Lopez Batista.  Armani and Melody reside with their mother in Arizona.  Webster maintains a good relationship with his children.

With the exception of the instant action, Webster Batista Fernandez has held himself out to be a hard-working individual, law abiding citizen, and good father.  To be sure, Webster has no criminal history, and has maintained steady employment in the music industry since 2017.   Mr. Batista Fernandez has been self-employed as a music

influencer, and has also produced music videos.  Unfortunately, Mr. Batista Fernandez's employment in the music industry led to his criminal activity in this case.  Nevertheless, Defendant has learned an important lesson from his involvement in criminal activity and resulting separation from his family and children.  Webster understands that his actions were wrong and that he will have to pay a significant penalty for his actions, which includes incarceration and substantial restitution to the victims in this case.

In the instant case, Webster Batista Fernandez's family and friends are very supportive of him and confirm that Webster is a great father, hard worker, honest, and helpful to his family and friends.  In addition, Mr. Batista Fernandez not only decided that he wants to rehabilitate his life, but in addition, he has taken the first steps towards rehabilitation.  In particular, Webster enrolled in a self-directed curriculum course known as Hustle 2.0 while in custody.  In fact, Defendant completed the first part of this program, passed the final exam, and received his Certificate of Completion on May 3, 2023.  Moreover, Webster understands that he will need to work hard for his own rehabilitation, and plans to continue with this self-help class so that he can better himself while in custody.

Webster is sincerely remorseful for his conduct and has learned an important lesson as a result of his actions and separation from his family.  Webster is especially regretful for the impact that his conduct is having on his family, as he will be separated from his children, including his baby who is only 20 months old, who will be without a father during his period of incarceration.  As a result, Webster has vowed that if given the

chance for a variance from the guidelines, he will do everything in his power to prove that he can be the dependable, hard-working father, and positive role model for his children.

In the instant case, based on the sentencing factors set forth in 18 U.S.C. §3553(a), Mr. Batista Fernandez requests that this Court accepts the plea agreement, and impose a reasonable sentence below the advisory guideline range. Based on Defendant's history, character, strong family support, lack of criminal history, and efforts towards rehabilitation, Webster Batista Fernandez should receive a variance and reasonable sentence below the advisory guideline range. Mr. Batista Fernandez is a peaceful man of good character and strong work ethic with definite potential for rehabilitation if given the chance.  Based on the totality of circumstances, history of Defendant, and his demonstrated desire to rehabilitate his life, a sentence not to exceed 48 months' imprisonment will allow Defendant the opportunity to rehabilitate his life and find employment following his release from custody so that he can pay restitution to the victims after serving a significant sentence in this case.

**B.**    ***Mr. Batista Fernandez's Acceptance of Responsibility and Need to Avoid Unwarranted Sentencing Disparities***

In the instant case, Defendant Webster Batista Fernandez has demonstrated acceptance of responsibility and provided a statement wherein he admitted involvement in the instant offense and assisted authorities with regard to his own misconduct by timely pleading guilty to the instant offense. Moreover, Defendant conceded that he had a

significant role with respect to the instant offense, and agreed pursuant to the plea agreement to pay restitution to the victims.

Mr. Batista Fernandez concedes that he made a terrible decision to become involved in criminal conduct, which has not only affected his family and children, but has also caused financial harm to the victims involved in this case.  Nevertheless, the instant offense constitutes aberrant behavior, as with exception to this offense, Mr. Batista Fernandez has held himself as a law-abiding citizen for his entire life, by working hard, providing support for his mother and children, and helping with his sister's children. Moreover, as demonstrated by the various letters of support, Webster has been a good role model for his family, and helped set a good example for his sister's husband, who did not have a strong father figure in his life. Unfortunately, Mr. Batista Fernandez exercised poor judgement by becoming involved in criminal conduct, which in turn has placed his future and entire family at risk.  Fortunately, Mr. Batista Fernandez is a good man who has strong family support and much to live for.  In addition, he will continue to have the support of his family and friends as he makes positive changes for the future.

Based on the sentencing factors set forth in 18 U.S.C. §3553, this Court should grant a variance and sentence Defendant Webster Batista Fernandez below the advisory guideline range.  Given Defendant's acceptance of responsibility and need to avoid unwarranted sentencing disparities amongst similarly situated defendants, a sentence not to exceed 46 months' imprisonment will best support the statutory goals of sentencing. While Defendant understands that he committed a very serious offense, Webster Batista

Fernandez is a man of good character and strong family support, with the chance for rehabilitation.

Clearly, Defendant Webster Batista Fernandez has learned a significant lesson and wants to reform his life, as demonstrated through his post-arrest conduct in this case. Ultimately, Mr. Batista Fernandez wants a second chance to be a positive role model for his children, and to provide substantial restitution to the victims. Based on the mitigating factors in this case, a sentence not to exceed 46 months' imprisonment will provide just punishment, allow for adequate deterrence, protect the public, and promote respect for the law. Such sentence also represents a significant sentence for Defendant's first felony offense.

## III.    CONCLUSION

Based on the foregoing, Webster Batista Fernandez respectfully requests that this Court impose a reasonable sentence of 46 months' imprisonment, combined with a restitution order.

Respectfully Submitted this 7 day of August, 2023.


                                    **SUZUKI LAW OFFICE**
                                    */s/ Richard Suzuki* ____
                                    Richard Suzuki, Esq.
                                    Attorneys for Defendant *Batista Fernandez*

# CERTIFICATE OF SERVICE

I certify that on the 7th day of August, 2023, I electronically transmitted this

document to the Clerk's Office using the CM/ECF system for filing and transmittal of a

notice of Electronic Filing to the following CM/ECF registrants:

HON. DOUGLAS L RAYES
UNITED STATES DISTRICT COURT
Rayes_chambers@azd.courts.gov

RAYMOND K WOO
Assistant United States Attorney
United States Attorney's Office
Raymond.woo@usdoj.gov

**SUZUKI LAW OFFICE**

*/s/ Richard Suzuki* ____
Richard Suzuki, Esq.
Attorneys for Defendant *Batista Fernandez*